[No. 12981.  In Bank. — May 7, 1891.]

## MINNIE KILBURN, RESPONDENT, v. CLEON KIL-BURN, APPELLANT.

MARRIAGE — CONSTRUCTION OF CODE — "MARITAL RIGHTS, DUTIES, OR OBLIGATIONS " — DEFINITION. — The words " marital rights, duties, or obligations," contained in section 55 of the Civil Code, which provides that consent to marriage "must be followed by a solemnization, or by a mutual assumption of marital rights, duties, or obligations," refer to such rights, duties, and obligations as arise from the contract of marriage and constitute its object, and embrace what the parties to the contract mutually agree to perform toward each other and to society.

ID. — CONTRACT OF MARRIAGE — AGREEMENT TO LIVE TOGETHER — ASSUMPTION OF MARITAL RIGHTS AND DUTIES — COHABITATION. — The mutual agreement of the parties to live together in the professed relation of husband and wife is essential to create a contract of marriage, and the contract, when made, imposes upon the parties to it the obligation to do so; and there can be no assumption or entering upon the discharge of the duty or obligation, within the meaning of section 55 of the Civil Code, without the cohabitation of the parties consenting to a present marriage.

ID. — DIVORCE — INSUFFICIENT PROOF OF MARRIAGE. — In an action for a divorce, where the evidence shows that after the parties had consented to a marriage without solemnization, there was no cohabitation, and nothing to indicate to the community that they had assumed the marriage relation, a finding that the contract of marriage was followed by a mutual assumption of marital rights, duties, and obligtions is not sustained by the evidence.

ID. — ADULTERY — EVIDENCE OF SECOND MARRIAGE. — In an action for divorce on the ground of adultery, where the marriage between plaintiff and defendant is not sought to be proved by the presumption arising from cohabitation, evidence of the defendant's marriage to the woman with whom he is charged to have committed adultery is inadmissible.

APPEAL from a judgment of the Superior Court of Monterey County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*H. V. Morehouse*, for Appellant.

The pretended contract was not a contract of marriage. (*White* v. *White*, 82 Cal. 427; *Letters* v. *Cady*, 10 Cal. 533; *Kelly* v. *Murphy*, 70 Cal. 560; *People* v. *Anderson*, 26 Cal. 133, 134; *Sharon* v. *Sharon*, 79 Cal. 633.) The relation was illicit in the beginning, and there being no testi-

mony to show any change in that relation, but, on the contrary, the evidence being that the relation after the pretended contract was still illicit, the presumption is, that it was illicit, and not matrimonial. ( *White* v. *White*, 82 Cal. 427; *Cunningham* v. *Cunningham*, 2 Dow, 482; Stewart on Marriage and Divorce, sec. 132.) There was no mutual assumption of marital rights, duties, or obligations. (*Sharon* v. *Sharon*, 79 Cal. 633.) There was neither evidence of a marriage contract, nor mutual assumption of marital rights, duties, or obligations. ( *Case* v. *Case*, 17 Cal. 598; *People* v. *Anderson*, 26 Cal. 133; *White* v. *White*, 82 Cal. 427; Stewart on Marriage and Divorce, secs. 135, 354.) The court erred in not permitting defendant to prove his marriage to Nellie Rowe, and thus rebut the presumption of marriage with Miss McCusker, the plaintiff; for the presumption of marriage arising from cohabitation and repute is a rebuttable presumption, and as the alleged adultery was with Nellie Rowe, his true and lawful wife, he was entitled to show that he was not guilty of crime, and thus establish the presumption of innocence. ( *Case* v. *Case*, 17 Cal. 598; *People* v. *Anderson*, 26 Cal. 133; *White* v. *White*, 82 Cal. 427; Stewart on Marriage and Divorce, secs. 124–126.)

*William H. Webb*, for Respondent.

DE HAVEN, J.— Action for divorce. The court below approving and adopting the special verdict of the jury on this point, found that on May 23, 1886, the plaintiff and defendant entered into a contract of marriage, by which they agreed then and there to a present marriage, and that this contract was followed on their part by a mutual assumption of marital rights, duties, and obligations. The defendant, who is the appellant here, contends that the finding is not justified by the evidence.

It appears that the parties first met at a skating-rink in Salinas City in August, 1885. At their second meeting, which was about a week afterwards, this acquaint-

ance ripened into an act of illicit intercourse, followed by other similar acts at opportune times, and, as a fruit of this relation, the plaintiff gave birth to a child on May 16, 1886. One week thereafter, defendant went to see plaintiff at the residence of her sister, where she was stopping. Here the plaintiff met defendant in the parlor, alone, and at this meeting the plaintiff testifies that she and defendant agreed upon a present marriage, and that it was to be kept secret in Salinas City, but not elsewhere, and the baby was to be named after him. As stated, no witnesses were present; but plaintiff's mother and sister each testifies that she came into the parlor afterwards, and that defendant then repeated to her the said agreement made with plaintiff, in reference to a present marriage, and also said that he wanted plaintiff to go into a neighboring county and live for a while, the mother to go with her. The mother also testified that she was authorized by defendant to introduce plaintiff as his wife, and she did so; "only he wanted it kept quiet, so that it would not get back into the valley. He did n't care about it elsewhere." The plaintiff and her mother then went to the city of San José, and there remained until March following. During this period the defendant called to see her once, remaining from nine or ten o'clock in the morning until one o'clock in the afternoon. From the time of the alleged contract of marriage until the commencement of this action, the plaintiff and defendant never cohabited together, that is, lived together in the same house, although upon a few occasions they had sexual intercourse with each other; nor is there any evidence that they were generally reputed to be husband and wife in the community where both lived, and defendant never contributed but seventy dollars to the support of plaintiff and her child. There is nothing to show that if such relation existed, it was known to any one except the parties, and the mother and sister of plaintiff. It is true, the mother testifies that

she introduced plaintiff as the wife of defendant; but she does not name the person to whom such introduction was made, nor does such person or persons give evidence in the case.   The defendant himself denies that he ever agreed to marry plaintiff, and there is other evidence which tends to corroborate him on this point; but as the finding of the court below was in favor of plaintiff, we have only thought it necessary to give the foregoing general outline of the case, as shown by the testimony offered by her, and upon which the court must necessarily have based its findings.

With this general statement of the nature of the evidence, we proceed to consider whether it is sufficient to show the existence of a marriage between the parties.

1. Section 55 of the Civil Code provides: " Marriage is a personal relation arising out of a civil contract, to which the consent of parties capable of making it is necessary.   Consent alone will not constitute marriage; it must be. follow.d by a solemnization, or by a mutual assumption of marital rights, duties, or obligations."

As there is a substantial conflict in the evidence as to the contract or agreement for a present marriage between the plaintiff and defendant, we cannot, under the settled rule here, disturb the finding of the court below on this point.   This consent being established, our next inquiry is, whether the evidence is sufficient to establish the fact that such consent was followed by a mutual assumption of marital rights, duties, or obligations; and in order to answer this it is necessary to first determine what is meant by the words " marital rights, duties, or obligations," as here used.   We have no doubt that they refer to such rights, duties, or obligations as arise from the contract of marriage, and constitute its object, and therefore embrace what the parties to such contract mutually agree to perform toward each other and to society.

LXXXIX. CAL.—4

"Marriage is considered in every country as a contract, and may be defined to be a contract according to the form prescribed by the law by which a man and woman capable of entering into such a contract mutually engage with each other to live their whole lives together in the state of union which ought to exist between a husband and his wife." (Shelford on Marriage and Divorce, 1.)

The mutual agreement of the parties to live together in the professed relation of husband and wife is essential to create a contract of marriage, and the contract, therefore, imposes upon the parties to it the obligation to do so; and where the agreement to marry is not followed by solemnization, there is no assumption of marital rights, duties, or obligations, within the meaning of section 55 of the Civil Code, until the commencement of cohabitation by the parties to the agreement. And by cohabitation is not meant simply the gratification of the sexual passion, but "to live or dwell together, to have the same habitation, so that where one lives and dwells there does the other live and dwell also." (*Yardley's Estate*, 75 Pa. St. 207.) This was, in effect, so held in *Sharon* v. *Sharon*, 79 Cal. 670, the court there saying: "The commencement of true and open matrimonial cohabitation under such an agreement is a mutual assumption of marital rights, duties, and obligations, while mere copulation, without such cohabitation, is insufficient."

The evidence in this case falls far short of showing that after the alleged consent to marry these parties ever assumed the marital rights, duties, or obligations of the marriage relation as we have defined them. There was no cohabitation, such as almost universally accompanies marriage, and nothing to indicate to the community that they had assumed such relation.

2. The defendant offered to prove that he was, on September 3, 1887, regularly united in marriage with

Nellie Rowe, the woman with whom he is charged in the complaint to have committed adultery, and for this purpose offered to introduce a marriage license in due form authorizing such marriage, and the certificate of a clergyman showing its solemnization. These papers were excluded by the court. This ruling was correct. This kind of evidence has been considered sufficient to rebut the presumption of marriage, which otherwise would follow from proof of cohabitation and general reputation that such cohabitation was matrimonial in its nature. (*Case* v. *Case,* 17 Cal. 598; *Jones* v. *Jones,* 48 Md. 391; 30 Am. Rep. 466.) We are not called upon here to either affirm or dissent from the rule announced in these cases. It is sufficient to say that it does not apply to the facts of this case. There was no proof of cohabitation in this case, and we do not see how the excluded evidence in connection with the other evidence in the case could have any legitimate or logical tendency to disprove the statements of witnesses who testified directly to the fact that more than a year previous thereto the defendant agreed to become the husband of the plaintiff.

This offered evidence, however, demonstrates the wisdom of the law in requiring an open matrimonial cohabitation of the parties thereto as evidence of marriage, where there is no solemnization, so that those contracting this relation may have some reasonable assurance that its validity, and the legitimacy of their children, will not be overthrown by proof of a prior secret marriage upon the part of either the husband or wife, and of which the other had no notice or suspicion.

Judgment and order reversed.

McFARLAND, J., HARRISON, J., GAROUTTE, J., BEATTY, C. J., and PATERSON, J., concurred.