500 P.2d 852

Wesley F. FOWLER and Juanita Fowler, husband and wife, et al., Plaintiffs, Counter-Defendants, and Respondents,

v.

Leona M. UEZZELL, Defendant, Counter-Claimant and Appellant,
and
Fred C. Farmer, Defendant and Counter-Claimant.

No. 10475.

Supreme Court of Idaho.

July 10, 1972.

Rehearing Denied Sept. 15, 1972.

SHEPARD, Justice.

This appeal results from an action by plaintiffs-respondents seeking rescission of a lease for farming ground and for damages, all on the grounds of fraud and deceit. Following trial to a jury and a verdict, judgment was entered thereon for plaintiffs-lessees, rescinding the lease and awarding damages. Defendant-appellant Uezzell appeals therefrom. We affirm.

Wesley and Juanita Fowler are the principal parties involved and, unless otherwise noted, they alone will be considered as "plaintiffs." Plaintiffs moved to Idaho in 1966. Shortly after their arrival they entered into discussions with the defendants regarding the rental of the property herein involved. The property is a tract of farming land, located near Murtaugh, Idaho, which is owned by Defendant Uezzell. Defendant Farmer was agent and manager of the land for Defendant Uezzell. During the discussions leading up to the lease, Wesley Fowler, together with the defendant Farmer, inspected the house and discussed the layout, grade, irrigation ditches and other characteristics of the farm. Thereafter the plaintiffs entered into a three year lease of the property with an option to purchase. The rental therefor was $8,000 per annum with the power bill for the pumping of irrigation water to be divided equally between plaintiffs and Defendant Uezzell.

Plaintiffs moved onto the property in May of 1966 and crops were planted. It soon became apparent that there was a water shortage for irrigation purposes. Plaintiffs complained to Defendant Farmer about the water shortage and it is alleged that Farmer reassured plaintiffs that sufficient water would soon be forthcoming. During the first growing season sufficient water was not available and plaintiffs' crops suffered from lack of water. During that first growing season, upon plaintiffs' complaint to Farmer, Farmer promised that he would guarantee more water for the second season and that in the inter-

James Annest, Burley, for appellant.

Rayborn, Rayborn, Webb & Pike, Twin Falls, for respondents.

im plaintiffs need only pay one-half of the rental otherwise due for the first growing season.

Approximately one year later, in the middle of the second growing season, plaintiffs filed the present action for re-scission of the lease and for damages. Various counterclaims were filed by de-fendants, however, such are not at issue in this appeal. The central issue at the trial and here is the alleged lack of irrigation water and whether the statements of Farmer during the preliminary lease nego-tiations regarding available and abundant water for the farm amounted to fraud and deceit.

■ Defendant-appellant Uezzell con-tends that plaintiffs failed to prove all of the essential elements of fraud which are:

"(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the man-ner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." See: King v. McNeel, 94 Idaho 444, 489 P.2d 1324 (1971); Gillingham v. Stadler, 93 Idaho 874, 477 P.2d 497 (1970); Walker v. Nunnenkamp, 84 Idaho 485, 373 P.2d 559 (1962).

■ We note at the outset:

" * * * where a jury's verdict is sup-ported by substantial and competent though conflicting evidence, a judgment based thereon cannot be set aside on ap-peal. [citations omitted] And on ap-peal, evidence must be viewed most fa-vorably toward respondent and against appellant." Cahill v. Logue, 93 Idaho 533, 537, 466 P.2d 573, 577 (1970).

We need then only examine the evidence to determine if there was and is substantial and competent evidence to support the finding of the jury.

■ There was ample evidence that a representation was made by Farmer that there was ample and even more than ample water for proper irrigation. The evidence also supports a finding that such representation was false. Plaintiffs testified to the lack of water and several other nearby farmers also testified that the failure of the crops was due to lack of water. It is undisputed that the representation was ma-terial since proper crops cannot be raised on the land in question without sufficient irrigation water. Shrives v. Talbot, 88 Idaho 209, 217, 398 P.2d 448 (1965). Farmer had farmed or managed the prop-erty in question for many years, and there-fore there is evidence of Farmer's knowl-edge of the falsity of his representations. The representations were made in the place, time and manner for the purpose of inducing plaintiffs to enter into the lease, and therefore it is clear that Farmer in-tended plaintiffs to rely upon his represen-tations. It is abundantly clear that plain-tiffs were ignorant of the falsity of the representations made by Farmer. Dam-ages resulting from the false representa-tions of Farmer and the plaintiffs' reliance upon such representations are clearly shown by the evidence.

■■ Defendant-appellant further con-tends that the plaintiffs have not shown that plaintiffs had a right to rely upon the representations of Farmer and points to certain evidence which she suggests indi-cates that they did not in fact rely upon the representations of Farmer. Defendant stresses certain language in the contract of lease, wherein it is stated that "lessees ac-knowledge and agree that they have exam-ined said premises; that they know the boundaries and acreages thereof * * *." Defendant suggests that such language proves independent investigation by plain-tiffs and the fact that plaintiffs acted on their own judgment. Such is not the case. The language refers to a physical examina-tion of the topography and borders of the property. It is obvious that certain factors such as water supply, particularly at the

time of the investigation in early spring, could not be determined. The record is replete with testimony by the plaintiffs that they relied upon Farmer's unique knowledge of the available water supply. The fact that plaintiffs investigated the capacity of the pumps by checking with the installer of the pumps does not militate against plaintiffs' position. Such an investigation merely indicated what volume of water could be pumped, assuming the existence of water. No showing has been made that plaintiffs knew or should have known of the existence or nonexistence of available water in the wells.

■■ Defendant next contends that plaintiffs "waived" any right to sue for fraudulent misrepresentation by remaining on the property during the first summer growing season and through the following winter. We note, however, that the evidence, although controverted, indicates that Farmer continued to make representations of adequate water and induced plaintiffs to remain on the property past the first growing season by representing that he would deepen the wells or otherwise increase the water supply during the coming year. Plaintiffs were further induced to remain upon the property by the reduction in rent for the first growing season. Plaintiffs' action in attempting to salvage as much value as possible from the crops already planted during the first growing season could plainly be construed as an attempt to mitigate their damages. Of this defendants cannot complain.

■■ Defendant Uezzell next contends that the evidence did not show that Defendant Farmer was her agent and that she was not to be bound by any representations made by Farmer. The evidence, however, unequivocally brands Farmer as the agent of the Defendant Uezzell and the representations were within the scope of his agency. Defendant argues that her position is sustained by the case of King v. McNeel, Inc., 94 Idaho 44, 489 P.2d 1324 (1971). King v. McNeel is clearly limited to real estate agents. In the present case

Farmer was not a real estate agent but an agricultural agent and manager for Defendant Uezzell and therefore his actions and representations were binding upon Uezzell.

Defendant Uezzell next contends that certain instructions of the trial court relating to the liability of a principal for acts of an agent were not broad enough to cover the issues in the present case. As heretofore noted defendant's own evidence showed that Farmer was the agricultural, managerial agent of the defendant. The instructions adequately and clearly set forth the law.

Defendant Uezzell lastly asserts that prejudicial error was committed when the trial court, upon motion therefor, refused to grant a mistrial. Such motion grew out of an interchange between counsel for plaintiffs and defendants. During the cross-examination of Defendant Farmer the following colloquy took place:

"Q. Mr. Farmer, have you ever been convicted of a felony?

A. What do you mean felony?

Q. A crime that's punishable by imprisonment in the State Penitentiary?

A. No.

Q. You haven't?

A. No.

Q. I don't mean have you ever been imprisoned in the State Penitentiary, I mean have you ever been convicted of a crime that you could have been sentenced to the penitentiary for?

A. No.

Q. You haven't?

A. No.

Q. Not at any time?

A. No.

Q. Now, this crooked well—

MR. ANNEST: Your Honor, just a moment please. Your Honor, I am going to object to the—or move to strike the answer and object to the question unless counsel here and now state that

he intends to produce proof on that subject.

MR. RAYBORN: I would be happy to inquire into details into the circumstances of the occasion that I have in mind. I think it would be improper in the presence of the Jury, but I would be happy to bring it out.

MR. ANNEST: I consider this very prejudicial unless proof is produced here and—well—

THE COURT: Are you prepared to prove to the contrary, Mr. Rayborn?

MR. RAYBORN: I can't prove the conviction, your Honor, but I can prove the circumstances which I think may have resulted in a conviction.

MR. ANNEST: * * * I am going to move the Court at this time for a declaration of mistrial * * *."

As noted, the court denied defendants' motion for a mistrial but admonished the jury to disregard the testimony after the first answer of "No" by the witness Farmer. The court later further gave a proper instruction to disregard that testimony. Defendant however contends that this particular interchange was so inflammatory that no instruction or admonishment could clear it from the jury's mind and that therefore the motion for mistrial should have been granted.

 It is apparent that the questioning up to the point of the first answer "No" by the witness Farmer was correct and proper. State v. Sheperd, 94 Idaho 227, 486 P.2d 82 (1971). We note that under the statutes, I.C. §§ 9–1209, [adopted as a Rule of this Court] 9–1302, counsel during a trial is authorized to inquire as to whether any witness has been convicted of a felony. The theory behind such statutory authorization is evidently that a witness, if shown to have been a convicted felon, is probably unworthy of belief. While we entertain certain reservations as to the continued vitality of such a theory, the privilege of inquiry is nevertheless accorded by the statute. We further note that certain authorities referred to by the defendant result from possible prejudice in the trial of criminal defendants. We will not dogmatically apply rationales and theories which may be obviously applicable in criminal cases to cases involving civil procedures.

 A close reading of the testimony in question indicates that Farmer was asked the typical question as to whether he ever had been convicted of a felony. He did not squarely answer that question. Counsel for plaintiff was then privileged to ask the few following questions and it appears that no necessary prejudice resulted therefrom. Thereafter, although plaintiffs' counsel had dropped the matter, counsel for the defendant joined in the discussion before the jury and therefore cannot claim completely clean hands in this matter.

Defendant suggests counsel for plaintiffs was aware that Farmer had never been convicted of a felony. It is contended that counsel for plaintiffs nevertheless asked the questions of Defendant Farmer hoping thereby to prejudice the jury against Farmer and the defense case. Such facts are not clearly apparent from the record and therefore cannot and will not be considered herein. If plaintiffs' counsel's actions were as represented by defendant, such may involve ethical considerations and a determination of whether the statute authorizes such conduct on behalf of trial counsel. These questions, however, we do not decide herein.

 If the conduct of an attorney in presenting this case "oversteps the bounds of propriety and fairness" and is not cured by proper instructions, grounds for a new trial may exist. Cogswell v. C. C. Anderson Stores Co., 68 Idaho 205, 192 P.2d 383 (1948); Stewart v. City of Idaho Falls, 61 Idaho 471, 103 P.2d 697 (1940). In the latter case it was stated:

"'Counsel cannot deliberately go outside the evidence and attempt to incite the passions or prejudice of the jury and have such conduct cured by an instruction to the jury at the close of the trial,

to the effect that they must not consider such remarks, and where a judgment is obtained by such conduct a new trial must be granted, unless it affirmatively appears that the judgment was right and would have been the same in the absence of such unauthorized argument.' * * *

" ' "This court has many times had before it this identical question, and has proclaimed the rule that judgments will not be reversed by reason of misconduct of counsel at the trial unless the appellate court is of the opinion that such misconduct had prevailing influence upon the jury to the detriment of appellant." ' "

It is clear in the case at bar that the correct result was reached and would have been reached in the absence of the alleged error. The evidence was clearly on the side of the plaintiffs, and Farmer's reputation for truth and veracity had been severally impeached by a number of witnesses prior to the above incident. The incident in question could have done no more than make a slight contribution to an already overwhelming indictment of Farmer's veracity. We are unable to hold that this incident had any influence on the jury, to say nothing of a "prevailing influence upon the jury to the detriment of the appellant."

The judgment is *affirmed.* Costs to the respondent.

During the pendency of this appeal the Court in ruling upon certain motions reserved for later disposition the imposition of sanctions upon counsel. Since appropriate action may extend beyond counsel of record herein, an order of reference will issue to the commissioners of the Idaho State Bar for an investigation and recommendatory order in the premises.

McQUADE, C. J., and McFADDEN, DONALDSON and BAKES, JJ., concur.