793 P.2d 206

**TREASURE VALLEY BANK,**
Plaintiff–Counterdefendant–Respondent,

v.

**Donald P. BUTCHER and Helen
Butcher, Husband and Wife,
Defendants,**

and

**Harmon H. Johnson and Elizabeth
Johnson, Husband and Wife,
Defendants–Counterclaimants–Appellants.**

**Harmon H. JOHNSON and Elizabeth
Johnson, Husband and Wife,
Third–Party Plaintiffs–Appellants,**

v.

**David L. DYKSTRA and Jackie K.
Dykstra, Husband and Wife,
Third–Party Defendants.**

No. 17763.

Supreme Court of Idaho.

May 24, 1990.

Hamilton, Clark, Michaelson & Drescher, Nampa, Idaho, for defendants-counterclaimants-appellants. Mark L. Clark, argued.

Uranga & Uranga, Boise, Idaho, for plaintiff-counterdefendant-respondent. Louis L. Uranga, argued.

McDEVITT, Justice.

This case arose out of a partnership buy out in which the buying partner issued a promissory note with a deed of trust to property held by the partnership. The issues involved pertain to a partner's conveyance of an equitable interest in real property owned by the partnership, the effect such conveyance has on a mortgagee of the property and the effect actual knowledge of a prior interest has on a subsequent encumbrancer. The trial court held that the plaintiff is the owner of certain property in fee simple and that the defendants have no right, title, lien or interest in or to the real property.

On November 30, 1975, Richard and Joyce Butler, husband and wife; David and Jackie Dykstra, husband and wife; and Merle and Laura Beckley, husband and wife, formed the general partnership of DB2 Enterprises ("the partnership").

On November 11, 1976, the partners executed a warranty deed transferring the real property on Holly Street in Nampa, Idaho, the subject of this litigation, to the partnership. The original partnership agreement required that all six (6) partners execute all securities, deeds, promissory notes and contracts on behalf of the partnership. The wives subsequently all executed general powers of attorney so that their respective husbands could sign on their behalf. On January 15, 1976, all of the partners executed an amendment to the partnership agreement which authorized execution of documents by the male partners only.

The Butlers withdrew from the partnership in 1980. On February 2, 1981, David L. Dykstra acquired the Beckleys' partnership interest. The price was $15,000, plus a $20,000 promissory note. The promissory note was secured by a deed of trust to part of the partnership's Holly Street property granted by Dykstra to Beckley. Dykstra executed the note and deed of trust in his own name without identifying the land as being owned by the partnership. The deed of trust was notarized and recorded in Canyon County on June 26, 1981. Chicago Title Company was the named trustee.

On June 26, 1981, Dykstra, on behalf of the partnership, entered into a loan agreement with Treasure Valley Bank ("T.V. B."). T.V.B. loaned the partnership $45,-697.62. The loan was secured by a deed of trust on the Holly Street property in favor of T.V.B. The deed was executed by David Dykstra on behalf of the partnership, notarized and recorded on June 26, 1981. Pioneer Title Company of Canyon County was the named trustee. Prior to executing the deed of trust, Dykstra personally advised an officer of T.V.B. about the existence of the prior deed of trust in favor of Beckley on the same parcel and told them that it would be necessary for T.V.B. to obtain a subordination agreement from Beckley in order to have priority over Beckley's deed of trust. Notwithstanding this warning, T.V.B. went ahead with the loan agreement and did not contact Beckley.

On August 15, 1983, Merle W. Beckley assigned his interest in the deed of trust of February 2, 1981, to Donald P. Butcher and Helen L. Butcher of Othello, Washington. This assignment was notarized and recorded on August 15, 1983. In 1986, after the partnership defaulted on its promissory note to T.V.B., T.V.B. commenced statutory foreclosure against the partnership on the deed of trust to the Holly Street property. T.V.B. mailed notice of the pending trustee's sale to Donald T. Butcher and Helen L. Butcher.

On May 15, 1987, T.V.B. obtained a trustee's deed to the Holly Street property at the trustee's sale. The price was $40,000.

In November and December, 1987, T.V.B. negotiated for the sale of the property to the defendants in this action, the Johnsons.

On February 25, 1988, T.V.B. filed its quiet title action against the Butchers. On March 10, 1988, the Butchers assigned the promissory note Dykstra had executed and delivered to Beckley, along with the deed of trust to the Johnsons. On April 15,

1988, the Johnsons were joined as defendants in T.V.B.'s quiet title action. A hearing was held on T.V.B.'s motion for summary judgment on September 9, 1988. After consideration, the trial court granted the motion. The Johnsons appeal.

Both parties raise numerous issues on appeal, all of which pertain to the ultimate question, which is whether the trial court erred in ruling, on summary judgment, that T.V.B. was vested with title to the Holly Street property. This ultimate question is resolved by determining whether Dykstra's grant of the Holly Street property's deed of trust to Beckley conveyed a valid interest that encumbered the partnership's interest in the Holly Street property. If the deed of trust did not convey a valid interest, then T.V.B. has title; if it did, then we must address a second question. That question is whether the bank had actual notice of the prior encumbrance on the Holly Street property and the effect of that notice.

■ As a preliminary matter, we note that in summary judgment proceedings the facts are to be liberally construed in favor of the party opposing the motion, who is also to be given the benefit of all favorable inferences which might be reasonably drawn from the evidence. *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986).

### I. GRANT OF THE HOLLY STREET PROPERTY

T.V.B. argues that the grant of the Holly Street property, which Dykstra alone executed in his personal capacity, was improper because the partnership agreement requires that all partners execute grants of partnership property, and, because I.C. § 53–308(3) requires that all grants of partnership property be made in the name of the partnership.

### A. THE PARTNERSHIP AGREEMENT

■ The introductory clause to I.C. § 53–318 provides:

**53–318. Rules Determining Rights and Duties of Partners.**—The rights and duties of the partners in relation to the partnership shall be determined, *subject to any agreement between them,* by the following rules.... (Emphasis added.)

We read this provision to mean that any agreements made between the partners, pertaining to the rights and duties of the partners in relation to the partnership, are controlling as to the partners and the partnership.

The evidence is undisputed that as of January 15, 1976, the partnership agreement involved in these proceedings provided that only the male partners were required to execute documents conveying interest of the partnership.

In 1980, the Butlers withdrew as partners.

This left David Dykstra and his spouse and the Beckleys as partners in the partnership which owned the partnership property.

On February 2, 1981, Dykstra acquired the only other partnership interest remaining, that of the Beckleys. Concurrent with the purchase, at the closing of the conveyance of the Beckley partnership interest to Dykstra and in consideration of that purchase, Dykstra executed and delivered the promissory note and deed of trust, the subject of this action.

As of that moment, the only partner required to execute and authorized to execute on behalf of the partnership was David L. Dykstra. The Dykstras were the sole partners in the partnership; and the only evidence concerning the authorization of David Dykstra to execute the documents in question is the affidavit of David Dykstra wherein he affirmatively states that, "I was acting as an agent for DB2 ENTERPRISES with the authorization of Jackie K. Dykstra, the remaining partner, and Merle W. Beckley, the withdrawing partner, to execute and encumber the partnership property."

There can be no question that this act was authorized by the partnership agreement. There can be no question that the execution and delivery of the note and deed of trust, by the subject of these proceed-

ings, was authorized by the partnership agreement and by the partners therein at the time of the execution and delivery of those instruments.

## B. STATUTORY REQUIREMENTS THAT THE PARTNERSHIP BE NAMED IN THE CONVEYING DOCUMENT

■ The note and deed of trust executed by Dykstra in connection with the purchase of the Beckley partnership interest, was executed by Dykstra in his own name, without identifying the property described in the deed of trust as being owned by the partnership. T.V.B. asserts, as it did to the trial court, that the failure of the deed of trust to comply with the requirements of I.C. § 53–308(3) invalidates the instrument. Idaho Code § 53–308(3) states:

**53–308. Partnership property.—**

\* \* \* \* \* \*

3. Any estate in real property may be acquired in the partnership name. Title so acquired can be conveyed only in the partnership name.

The Johnsons argue that I.C. § 53–310(2) authorized the conveyance of the real property. That section provides that:

[W]here title to real property is in the name of the partnership, a conveyance executed by a partner, in his own name, passes the equitable interest of the partnership, provided the act is one within the authority of the partner under the provisions of paragraph 1 of section 53–309.

The issue is whether or not the note and deed of trust executed by Dykstra to Beckley created a valid lien on the real property described in that deed of trust.

T.V.B. urges that the only possible interpretation of I.C. § 53–310(2) is that the deed would only be effective where the initial conveyance had been made in the partnership name but executed only by an individual; in other words, that the instru-

ment conveying the lien or interest in real estate must evidence on its face that it is property the record title to which is in a partnership name.

■ It is, of course, elemental that sections of a common statute must be construed together so as to give them meaning whenever possible. *Sampson v. Layton*, 86 Idaho 453, 387 P.2d 883 (1963); *Norton v. Department of Employment*, 94 Idaho 924, 928, 500 P.2d 825, 829 (1972).

The rationale behind and the reason for the adoption of the particular Uniform Partnership Act provision in I.C. § 53–308(3) was in direct response to the common law view which required that title to real estate be held by recognized legal persons, necessitating a holding by the courts that a partnership could not take title to realty in the firm name.[1]

As noted in *Crane and Bromberg On Partnership*, by Allen R. Bromberg (1968), at page 223:

The obvious solution to the common law non-entity view was to authorize partnerships to take legal title (or any other estate) in the firm name, and this is what the U.P.A. has done. There can be little doubt that the Act means what it says, or that this is one of the more profound theoretical changes it has made. (Footnotes omitted.)

The rationale of the Uniform Partnership Act was to clearly depart from that which had been held by the common law. The Uniform Partnership Act authors, however, did recognize that a partnership interest could be conveyed other than in the partnership name, as reflected in I.C. § 53–310(2), as long as the partner conveying the interest had the authority to do so. In this case we have held that Dykstra did have the authority pursuant to the partnership agreement. The two sections, I.C. § 53–308(3) and I.C. § 53–310(2), permit the conveyance of the legal title under the terms of I.C. § 53–308(3), and the equitable

---

1. A partnership can really own no property. The property of the firm is owned by the members thereof. *Adams v. Blumenshine*, 27 N.M. 643, 204 P. 66, 20 A.L.R. 369 (1922); *Woodward v. McAdam*, 101 Cal. 438, 35 P. 1016 (1894); *Bankers Trust Co. v. Knee*, 263 N.W. 549 (Iowa 1935). Earlier cases are cited in Crane, *The Uniform Partnership Act—A Criticism*, 28 Harv. L.Rev. 762, 770 n. 65 (1915). Crane and Bromberg, *Law of Partnership* at 221 (1968).

interest of the partnership under I.C. § 53–310(2). In either instance, a valid lien is created, provided that the title to the property is in the partnership and the conveyance is for partnership purposes.

In other words, a conveyance executed by a partner in his own name, without mentioning the partnership, passes the equitable title of the partnership, making it an effective conveyance, provided the title is in the partnership and the conveyance is for partnership purposes.

59A Am.Jur.2d § 304.

The rationale for this result is further set forth by Professor Bromberg in *Crane and Bromberg On Partnership* at page 224:

If a partnership has taken title to land in its name, the U.P.A. provides that title can be conveyed only in that name. However, a conveyance by one or more of the partners, if a firm act, would convey at least an equitable title of the partnership. Such title would probably be bad against a later B.F.P. [*bona fide* purchaser] taking a conveyance in the firm name, unless the local recording acts caused the prior deed to be indexed in the firm name. It would similarly be bad against an execution creditor if, by the recording acts, he is in the position of a B.F.P. as regards unrecorded equitable interests.

We do hold that Dykstra's execution and delivery of the note and deed of trust, an act authorized by the written partnership agreement and authorized by the partners as provided for in I.C. § 53–309, conveyed an effective lien upon the Holly Street property of the partnership, even though executed solely in Dykstra's name. The conveyance was executed in a manner consistent with I.C. § 53–310(2).

## C. NOTICE TO T.V.B. OF THE PRIOR ENCUMBRANCE ON THE HOLLY STREET PROPERTY

The uncontroverted evidence in the record before us is that at the time Dykstra, on behalf of the partnership, entered the financing agreement with T.V.B., he personally informed an officer at T.V.B. about the prior Beckley deed of trust on the Holly Street property. He told the bank that there was a prior deed of trust in favor of Merle W. Beckley on that property, and that the bank should contact Beckley to obtain a subordination agreement from him. The bank ignored this advice and proceeded with its loan.

In this case, the deed of trust from Dykstra to Beckley had been placed of record. That recordation, however, conveyed no constructive notice to the world, or T.V.B., that the property was held in the name of the partnership.

On the face of this record, without actual knowledge, the bank's lien would have been superior to that of Beckley, and the bank's statutory foreclosure would have vested title in the Holly Street property in T.V.B.

The actual notice given to the bank by Dykstra of the Beckley deed of trust on the same parcel in which the bank was taking a security interest, deprived the bank of its right to rely solely on the record title concerning the Holly Street property. At a minimum, T.V.B. was put on notice to inquire further. The actual notice received by T.V.B. in this case renders its security instrument inferior to that granted to Beckley. *Fajen v. Powlus*, 96 Idaho 625, 533 P.2d 746 (1975); *Farm Bureau Fin. Co. v. Carney*, 100 Idaho 745, 747, 605 P.2d 509, 511 (1980).

T.V.B. urges that although it had actual notice of the Beckley deed of trust, the Johnsons cannot introduce evidence to show that the deed of trust is anything other than what it purports to be on its face. That is, namely, an instrument signed only by Dykstra bearing no indicia of an interest in the real property which is the subject of that deed of trust in anyone other than Dykstra.

The thrust of the argument of T.V.B. is that an attempt to show that the partnership owned the Holly Street property and that the Beckley deed of trust was a lien on partnership property executed on behalf of the partnership, is an attempt to vary the terms of the deed of trust to Beckley and is

precluded, absent a finding that that instrument is ambiguous, based on the authority of the Idaho Rules of Evidence and by the holding of this Court in *Hall v. Hall*, 116 Idaho 483, 777 P.2d 255 (1989).

The parol evidence rule is not applicable here, as title to property in question could be, and was, encumbered by Dykstra acting with the authority of the partnership. There is no attempt to vary the terms of the instrument in question. The sole issue is if the acts of Dykstra complied with I.C. § 53–310(2). We hold that they did.

We need not address the impact of *Hall v. Hall* in connection with the resolution of this case.

## II.  ATTORNEY FEES ON APPEAL

This matter was not frivolously pursued by either of the parties and did raise genuine questions of law to be resolved by this Court. Therefore, no attorney fees are granted on appeal.

Summary judgment is reversed and this matter is remanded for proceedings consistent herewith. Costs are awarded to the appellants.

BISTLINE, JOHNSON and BOYLE, JJ., concur.

BAKES, Chief Justice, concurring specially:

I concur in the Court's opinion except that I have some difficulty distinguishing our recent case of *Hall v. Hall*, 116 Idaho 483, 777 P.2d 255 (1989). I have difficulty understanding why parol evidence is admissible to vary the terms of the Beckley deed of trust in this case when parol evidence was not admissible to vary the terms of the deed in *Hall*. To permit Dykstra to testify (by affidavit in the summary judgment proceeding) that the deed of trust executed personally by him was in actuality a deed of trust executed by the partnership is as much a variation of the terms of a written document by parol evidence as was the attempt to vary the terms of the warranty deed in *Hall v. Hall* to show that the deed was, in part, a gift deed. Our decision today certainly limits the decision in *Hall v.*

*Hall*, if not effectively overruling it. In either event, I concur.