868 P.2d 527

**Judy Ann McCOY, Plaintiff–Respondent,**

v.

**Clinton S. McCOY, Defendant–Appellant.**

**No. 20351.**

Court of Appeals of Idaho.

Feb. 10, 1994.

201

Clinton S. McCoy, pro se.

David E. Rayborn, Pocatello, for plaintiff-respondent.

WALTERS, Chief Judge.

This is a divorce case. On appeal, we are asked to determine whether the magistrate erred when he concluded that no common law marriage existed between the parties before they were ceremonially married, and whether he properly characterized and distributed their property. The magistrate's decision was upheld by the district court on intermediate appeal. We also affirm.

### Facts and Procedural Background

Judy Ann McCoy, plaintiff-respondent, and Clinton McCoy, defendant-appellant, are both Idaho residents. They have had an on-again, off-again relationship since 1969. In 1986, they were formally married in a ceremony in Las Vegas. In 1990, Judy filed for divorce. In response to the complaint, Clinton claimed that he and Judy had a common law marriage by virtue of having lived together for various periods between 1980 and 1986. He also asserted that property acquired before their marriage ceremony in 1986 was community property. In 1991, the

magistrate granted Judy's request for a divorce, concluding that no common law marriage existed between 1980 and 1986. The magistrate also entered an order dividing the parties' separate property and the community property they acquired after they were formally married. A decree of divorce and judgment, reflecting the court's findings and conclusions, was entered December 5, 1991. Clinton appealed to the district court, arguing that a common law marriage existed and the magistrate wrongly characterized and divided the property. The district court affirmed. Clinton presents to this Court the same brief, issues, and arguments he submitted to the district court.

### Standard of Review

In this case, the magistrate made findings of facts and conclusions of law regarding the lack of a common law marriage and the division of property. The findings and conclusions were upheld by the district court. It is the order of the district court, sitting in its appellate capacity, from which Clinton appeals. However, our appellate standards require us to review the trial court record independently from, but with due regard for, the district court's decision. *Robinson v. Joint School District No. 331,* 105 Idaho 487, 490, 670 P.2d 894, 897 (1983); *Desfosses v. Desfosses,* 120 Idaho 354, 356, 815 P.2d 1094, 1096 (Ct.App.1991). Findings of fact supported by substantial and competent evidence, even though that evidence may be conflicting, will not be disturbed on appeal. *Pierson v. Jones,* 102 Idaho 82, 85, 625 P.2d 1085, 1088 (1981); *Desfosses,* 120 Idaho at 356, 815 P.2d at 1096; *Freiburghaus v. Freiburghaus,* 103 Idaho 679, 681, 651 P.2d 944, 946 (Ct.App.1982). If the law has been properly applied to the facts as found, the judgment will be upheld on further appeal. *Desfosses,* 120 Idaho at 356, 815 P.2d at 1096; *Hentges v. Hentges,* 115 Idaho 192, 765 P.2d 1094 (Ct.App.1988). Where findings made by the trial court are challenged on appeal, the evidence must be viewed most favorably toward the respondent and against the appellant. *Cahill v. Logue,* 93 Idaho 533, 537, 466 P.2d 573, 577 (1970); *Freiburghaus,* 103 Idaho at 681, 651 P.2d at 946.

### No Common Law Marriage Existed

The first question presented is whether the magistrate erred when he determined that the parties did not have a common law marriage. Idaho Code § 32–201 defines marriage to be:

> a personal relation arising out of a civil contract, to which the consent of the parties capable of making it is necessary. Consent alone will not constitute marriage; it must be followed by a solemnization, or by mutual assumption of marital rights, duties or obligations.

Consent to be married may be manifested in any form. I.C. § 32–203. The consent required by I.C. § 32–201 must be given when the parties enter into the contractual responsibilities of marriage. *Metropolitan Life Insurance Company v. Johnson,* 103 Idaho 122, 127, 645 P.2d 356, 361 (1982). Consent need not be manifested in any particular way or with "magic words;" rather it may be express or implied from the parties' conduct. *Id.* When persons having the capacity to contract have held themselves out to be husband and wife, and have gained that general reputation in the community, or where they acknowledge that they are husband and wife, a court might be warranted in inferring that at the outset the parties mutually consented to the assumption of a marital relationship. *Id.*

The best evidence of consent or agreement to a common law marriage is a written compact signed by both parties and manifesting their intent to be married. *Id.* The next best evidence would be the parties' testimony regarding the marriage, or the testimony of others present when the agreement was made. *Id.* However, consent may also be shown by circumstantial evidence such as cohabitation, reputation and the manner in which the couple characterize the relationship. *Id.* When a couple cohabit, assume the rights, duties and responsibilities of marriage, and hold themselves out as being married, a presumption of marriage arises which, if disputed, must be overcome by clear and positive evidence. *Id.*

There is substantial and competent evidence to support the magistrate's determi-

nation that no common law marriage existed between 1980 and 1986. Judy testified that she never consented to be Clinton's wife during this period and never considered herself married. Clinton and his witnesses testified that several times Clinton introduced Judy as his wife or "old lady." Judy never actively refuted these introductions. However, she also never asserted that she was married to Clinton or was his wife. In fact, she testified to the contrary.

Circumstantial evidence also supports the magistrate's findings and conclusions. The parties' cohabitation between 1980 and 1986 was erratic. During that time, Clinton was sentenced to the Idaho State Penitentiary. He was paroled, returned to prison for a parole violation, and later released. In total, he spent from one and one-half to two years in prison. Judy spent six months in Arizona caring for her ill mother without Clinton's company. Judy filed tax returns for 1984 and 1985 as a single person. She continuously received her paycheck in her maiden name. She maintained a separate bank account and acquired real estate in her name only. With her separate funds and before the marriage, she purchased the home where the two lived after they were ceremonially married.

Clinton asserts to this Court, as he did to the district court, that the magistrate did not give him the benefit of the presumption of marriage required by law and that the parties had implicitly consented to the marriage. Clinton presented evidence that he and Judy had lived and traveled together, and had sexual relations between 1980 and 1986. He also testified that Judy represented to a parole officer that she and Clinton were married, and allowed herself to be introduced as his wife. We agree with the district court that even if this evidence was "sufficient to establish a presumption of marriage and shift the burden of proof to Judy, the clear and positive evidence presented by Judy was sufficient to rebut the presumption." [1]

## Evidence Supports the Property Division

The second question Clinton presents is whether the magistrate erred when he characterized the property as separate or community, and divided it accordingly. First, Clinton argues that the home occupied by the couple on Ardella Street in Pocatello was community property. Clinton asserts that the magistrate erroneously concluded that the home was Judy's separate property based on two determinations: (1) Judy purchased the home with her separate funds; and (2) the language used in a subsequent deed containing Clinton's name was ambiguous, which made it possible for Judy to testify as to her intent in putting Clinton's name on the deed.

The Idaho Code defines separate property of a spouse as follows:

All property of the husband or the wife owned by him or her before marriage, and that acquired afterward by either gift, bequest, devise or descent, or that which either he or she shall acquire with the proceeds of his or her separate property, by way of moneys or other property, shall remain his or her sole and separate property.

I.C. § 32–903. All other property acquired after marriage by either spouse is community property. I.C. § 32–906.

The record clearly indicates that Judy bought the home with her separate property. In 1984 Judy's mother died, and in the same year Judy inherited approximately $137,000. With that money, she opened, before the ceremonial marriage, her own market interest bank account which we will call account "19." In August, 1984, Judy made a down payment of $44,000 toward the $68,000 purchase price for the home. The money was drawn from account 19. The remainder of the purchase price was paid in late February, 1987, and at that time Judy received a deed free from encumbrances. The record indicates that the money to pay the balance owed

1. We note that in 1980 Judy filed a complaint against Clinton for possession of the home they were periodically sharing. Clinton raised a defense of common law marriage. The court found that no such marriage existed. We make this observation only to point out that the parties had express notice of the requirements of a common law marriage long before the commencement of the instant case.

for the house came from account 19. The money was transferred from account 19 by Judy to the couple's joint checking account, account "22," and on the same day she wrote a check from account 22 to complete payment for the house.

 Clinton, nevertheless, asserts that the house was paid for with commingled funds from account 19, thus rendering the house community property. However, the only evidence that Clinton contributed any money to account 19 was a deposit slip for $200 dated April, 1985. Judy disputed the authenticity of the document. More importantly, the deposit was made before Judy and Clinton were married and had begun accumulating community funds. Further, Judy and Clinton had been married only three months when Judy paid off the house. Any interest that may have been accumulated on Clinton's $200 during those months is community property. *Lang v. Lang,* 109 Idaho 802, 807, 711 P.2d 1322, 1327 (Ct.App.1986). However, when compared to the quantity of money in the account, Clinton's principal deposit of $200 was readily traceable and does not constitute sufficient commingling to change the character of the entire account. Substantial evidence supports the magistrate's finding that Judy was able to trace the final payment for the house to her separate funds, and the conclusion that the house was her separate property.

 Clinton's second assertion regarding the characterization of the home as separate property disputes the magistrate's determination that the language used in the post-purchase warranty deed was ambiguous. Clinton argues that the language is not ambiguous and therefore Judy's parol evidence should not have been considered.

The record reveals the following. In May, 1987, Judy completed a "standard form" warranty deed for the home with the following language:

> For Value Received Judy A. McCoy, formerly known as Judy A. Randall, the grantor, do [sic] hereby grant, bargain, sell and convey unto *Clinton Samuel McCoy or Judy A. McCoy,* husband and wife ... the grantee, the following premises [legal description of the Ardella Street property]....

[Emphasis added.] The document was recorded in November, 1987, at Clinton's request. The magistrate determined that the deed was ambiguous because it purported to transfer the property using a disjunctive word—to Clinton "or" Judy—and the magistrate allowed Judy to testify to her intent behind executing the deed. The magistrate then found that Judy did not intend to transfer the home to Clinton and the home consequently remained Judy's separate property. Judy testified that, "All I intended to do was put his name on the house, because you're married [and] that's what I always thought you were supposed to do." She stated she did not intend to make a transfer or a gift of the property to Clinton. The district court agreed with the magistrate's analysis and explained that the use of the word "or" in a deed of conveyance was unusual, suggested something other than an outright conveyance, and did not clearly define Judy's intent.

 Here, we apply the fundamental legal principles discussed in a similar case, *Hall v. Hall,* 116 Idaho 483, 484, 777 P.2d 255, 256 (1989). There, the Court stated that "[w]here possible, the court should give effect to the intention of the parties to a deed." *Hall,* 116 Idaho at 484, 777 P.2d at 256; *see also Phillips Industries, Inc. v. Firkins,* 121 Idaho 693, 697, 827 P.2d 706, 710 (Ct.App. 1992). If the language of a deed is plain and unambiguous the intention of the parties must be determined from the deed itself, and parol evidence is not admissible to show intent. *Hall,* 116 Idaho at 484, 777 P.2d at 256; *Phillips,* 121 Idaho at 697, 827 P.2d at 710. Oral and written statements are generally inadmissible to contradict or vary unambiguous terms in a deed. *Hall,* 116 Idaho at 484, 777 P.2d at 256. But where the deed's language is ambiguous, parol or extrinsic evidence describing the surrounding facts and circumstances is admissible to prove the parties' intent. *Id.* In such a case, the interpretation of intent is a question of fact to be determined by the trier of fact, not only from the instrument itself but also from extrinsic evidence. *Phillips,* 121 Idaho at 697, 827 P.2d at 710.

Here, Judy's use of the word "or" in the deed created an ambiguity requiring explanation by extrinsic evidence. It is impossible to ascertain from the deed whether Judy intended to transfer to Clinton any interest at all in the property; or, if she did intend to transfer an interest, whether the transfer was meant to create a community interest or separate interests to be held by her or by Clinton. In *Hall*, the Court held that the vesting language used in the deed in that case was not ambiguous, making parol evidence of intent inadmissible.[2] *Hall* is distinguishable from the instant case, however, because the property described in Halls' deed was acquired with community funds and the deed described a transfer to the parties in the conjunctive, using the word "and." The Court determined that parol evidence could not be admitted to show whether the transfer of property was a sale or a gift. In the instant case, the property clearly was Judy's separate property before the deed was executed, and the language in the deed created an ambiguity as to whether Judy intended to transfer any interest at all— regardless of whether the transfer is characterized as a sale or as a gift.

In summary, we uphold the magistrate's decision to permit extrinsic evidence of Judy's intent relating to the post-purchase deed to the Ardella Street property. We also affirm the magistrate's conclusion that the home remained Judy's separate property.

Next, Clinton asserts that account 22, the parties' joint checking account, contained commingled funds and, therefore, property bought with the funds—including the house, Judy's two Individual Retirement Accounts (IRA's), her 401K retirement plan with her employer, her car, and other personal items—were community property. Testimony established that both parties deposited into this account their monthly income checks: Judy from her job as a nurse and Clinton from his social security disability income. The account was used to pay the recurring monthly expenses of the community. Judy testified that because the parties used all of their monthly income to get by,

account 22 had little or no hold-over balance from month to month. The magistrate's findings regarding account 22 were limited to noting that it was an account containing commingled funds.

▨ Substantial evidence supports the magistrate's finding that Judy's two IRA's were purchased before she and Clinton were married with money she received through inheritance from her mother. Her 401K plan, obtained through her employer, was also begun before marriage. The magistrate concluded that the value of the two IRA accounts at the time of the ceremonial marriage, $4,498.74, was Judy's separate property and the increased value evident at the time of divorce, $1,470.22, whether from contribution or interest, was community property. The 401K plan received similar treatment by the magistrate. It was found to be worth $13,305.89 at the time of the marriage and $27,741.93 at the time of divorce. The increase of $14,436.04 was determined to be community property.

We agree with this analysis. No evidence was presented to show that Judy or Clinton withdrew any funds from the retirement accounts during the marriage, or that Clinton contributed any of his separate property to these accounts. The evidence representing the values of the accounts at the beginning and end of the marriage adequately traces the parties' separate property in each account.

▨ Substantial evidence also supports the finding that the personal property located at the house, primarily furniture, was Judy's separate property. Judy testified that she bought the furniture with inherited money when she first purchased the home, i.e., before the ceremonial marriage. The documentary evidence regarding the furniture consists of checks Judy wrote to pay for the furniture. The checks were written before she and Clinton were married and therefore the purchase-payments retain their character as Judy's separate property. The same analysis applies to Clinton's challenge to the magistrate's conclusion that Judy's

---

2. We note that *Hall* has perhaps been limited by *Treasure Valley Bank v. Butcher*, 117 Idaho 974,

793 P.2d 206 (Bakes, C.J., concurring specially, 117 Idaho at 979, 793 P.2d at 211).

1985 Subaru automobile is her separate property. Clinton has failed to produce any evidence, beyond his own conclusory statements, to show why the vehicle should not be considered Judy's separate property.

For the foregoing reasons, we affirm the decree of divorce and judgment entered by the magistrate. Costs to respondent, Judy Ann McCoy; no attorney fees awarded on appeal.

LANSING and PERRY, JJ., concur.