898 P.2d 1086

**Wayne CROWN, Clark Bean and Steve Bean, Plaintiffs–Appellants,**

v.

**STATE of Idaho, the DEPARTMENT OF AGRICULTURE, Defendant–Respondent.**

**No. 21403.**

Supreme Court of Idaho,
Twin Falls, November 1994 Term.

June 28, 1995.

Lloyd J. Walker, Twin Falls, for plaintiffs-appellants.

Elam & Burke, P.A., Boise, for defendant-respondent. Jeffrey J. Ventrella argued.

McDEVITT, Chief Justice.

Wayne Crown, Clark Bean, and Steve Bean (the growers) appealed from a summary judgment dismissing their negligence action against the Department of Agriculture (DOA) and from an order awarding the DOA attorney fees for successfully resisting the growers' motion to compel discovery. The Court of Appeals affirmed, and this Court granted the growers' petition to review.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

From 1983 to 1988 the growers delivered their bean crops to the Hawkins Warehouse, a licensed and bonded commodities warehouse in Filer, Idaho. The DOA conducted regular inspections of the physical contents and financial records of the warehouse pursuant to I.C. §§ 69–201 to 267 in order to ensure that the warehouse had sufficient inventory for its depositors.

Jerry Hawkins (Hawkins), the warehouse manager, called the DOA in April of 1988 and requested that the DOA come and conduct its inspection. Because he knew that he had a substantial shortfall of bean inventory, Hawkins moved one to two hundred boxes of dirt and bean culls into the warehouse and then surrounded them with boxes of beans. Hawkins also doctored the warehouse books so that it appeared that 40,000 cwt. of beans were "written off." He also had checks drawn up to show a fictional planned purchase of 30,000 cwt. of additional beans.

David Sparrow (Sparrow) came to the warehouse on behalf of the DOA and conducted the inspection from May 3, 1988, to May 9, 1988. Sparrow never discovered the boxes filled with dirt and culls and accepted Hawkins' explanation that the 40,000 cwt. of beans that had been "written off" were transferred to treated seed. Although Sparrow's

inventory still found the warehouse to be 6,475 cwt. short, Sparrow accepted Hawkins' representation that additional beans were to be purchased when Hawkins showed Sparrow several uncashed checks made payable to growers.

Sparrow completed his inspection but never followed up to see if Hawkins purchased the beans as promised. In late August 1988, the growers began to deliver their 1988 bean crop to the warehouse. On November 21, 1988, after an internal audit revealed the warehouse's serious inventory shortfall, the warehouse management ceased operation and contacted the DOA which then seized the warehouse.

The growers' case was originally brought on January 5, 1989, as a class action against a number of parties, including the DOA. However, the DOA was dismissed as a party because the growers had failed to comply with the Idaho Tort Claims Act's requirement that they first present their claim to the governmental defendant.[1]

On January 6, 1989, the Hawkins Warehouse filed a Chapter 11 petition in bankruptcy. The growers then initiated an adversarial proceeding as part of that litigation in which the DOA was named as a defendant.

After the DOA was dismissed from the above-described class action and the growers' claim under the Tort Claims Act was denied, the present case was filed on November 2, 1990.[2] The growers alleged that the DOA had negligently conducted inspections of the Hawkins Warehouse that failed to disclose shortfalls in inventory from the 1983–88 growing seasons. In addition, the growers alleged that the DOA negligently failed to inform them of the insufficient inventory and failed to close the warehouse upon learning of the shortfall in 1988, thus allowing the growers to deliver their 1988 crop to a warehouse that the DOA knew was in non-compliance. The growers alleged damages for loss

---

1. Several of the other defendants were dismissed on various grounds, and the case ultimately went to trial against only William Nungester, one of the directors of the failed warehouse. The district court found that, as a director, Mr. Nungester had not breached any duty to the growers. The growers appealed and that case is presently pending before this Court: *Crown v. Nungester,* Supreme Court No. 21283.

2. Although the action was initially filed seeking class action status, the DOA asserts that Rule 23 certification never occurred. The growers' briefs on appeal do not dispute that statement and nothing in the record suggests that class certification ever took place.

of half of their 1988 crop and for beans deposited prior to 1988.

While this state-court case against the DOA was pending, on March 22, 1991, the bankruptcy court issued a memorandum decision granting the DOA's motion to dismiss on the grounds that the growers had parallel litigation pending in state court. The bankruptcy court also reasoned that because the warehouse's reorganization plan had already been confirmed and the adversarial proceeding was not a challenge to that action, the bankruptcy court was no longer the proper forum. On April 25, 1989, the bankruptcy court issued its order dismissing the DOA as a party.

On September 27, 1991, the DOA moved for dismissal or summary judgment. As grounds, the DOA claimed (1) that the growers' claims were barred by *res judicata* due to the bankruptcy court's order of April 25, 1989; (2) that the 1988 amendment to the Tort Claims Act, I.C. § 6–904B, barred the growers' claims premised on negligent inspection and negligent failure to revoke the warehouse's license; (3) that the discretionary function exemption to the Tort Claims Act barred the growers' claims for negligent failure to publicize and/or revoke the warehouse license; (4) that the misrepresentation exception to the Tort Claims Act barred the growers' claim for negligent failure to publicize; and (5) that the growers could not establish proximate cause for their losses under any theory.

On January 13, 1992, the district court issued a Memorandum Opinion Granting the DOA's Motion For Summary Judgment And Motion To Dismiss. The district court based its ruling on the two alternative grounds of *res judicata* and sovereign immunity. The court held that the bankruptcy order of April 25, 1989, barred the growers' claims under *res judicata*. The court also held that I.C. § 6–904B barred the growers' negligent inspection claims because the growers had failed to allege or prove the inspection was conducted with gross negligence. Finally, the district court reasoned that the growers' claim of negligent failure to revoke the ware-

house's license and negligent failure to publicize the warehouse inspection results were both barred by the Tort Claims Act's discretionary act exemption.

On February 24, 1992, the district court issued a memorandum modifying its initial memorandum decision granting the DOA summary judgment. Having learned of the bankruptcy court's March 22, 1991 Memorandum Decision, the district court reversed its earlier ruling that the bankruptcy court's April 25, 1991, decision barred the grower's claims under *res judicata* principles. However, the district court stood by its initial sovereign immunity analysis without alteration.[3]

An earlier ruling of the district court is also at issue in this appeal. The growers served interrogatories on Dr. Greg Nelson, the Director of the DOA. Dr. Nelson did not respond and the growers then moved to compel under I.R.C.P. 37(a)(2). The DOA then filed an opposing memorandum arguing that, pursuant to I.R.C.P. 33(a)(1), serving Dr. Nelson was improper and, as a governmental agency, the DOA was entitled to designate the appropriate employee to respond to interrogatories. The district court agreed and thereafter awarded the DOA attorney fees related to the DOA's successful opposition to the growers' motion to compel discovery.

The growers appealed both the summary judgment and the award of attorney fees to the DOA for resisting the growers' motion to compel. This Court assigned the case to the Court of Appeals and the Court of Appeals then affirmed the district court's summary judgment and award of attorney fees. This Court subsequently granted the growers' petition for review.

## II.

**THE DISTRICT COURT IMPROPERLY GRANTED THE DOA'S MOTION FOR SUMMARY JUDGMENT ON THE GROWERS' CLAIMS OF NEGLIGENT INSPECTION.**

 We begin by re-stating the applicable standard of review:

memorandum which explained that the claim against the DOA was not dismissed on the merits, but because the parallel proceeding was ongoing in the district court.

---

3. In an October 7, 1992, Memorandum Decision and Order, the district court sanctioned the DOA's attorney under I.R.C.P. 11 for presenting the bankruptcy order without the accompanying

In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the district court in ruling on a motion for summary judgment. *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994); *East Lizard Butte Water Corp. v. Howell*, 122 Idaho 679, 681, 837 P.2d 805, 807 (1992). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Bonz v. Sudweeks*, 119 Idaho 539, 541, 808 P.2d 876, 878 (1991). Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *McCoy v. Lyons*, 120 Idaho 765, 769, 820 P.2d 360, 364 (1991).

*Thomson v. Idaho Ins. Agency, Inc.*, 126 Idaho 527, 529, 887 P.2d 1034, 1036 (1994).

The inspection of the warehouse in May of 1988, as well as any earlier allegedly negligent inspections which failed to detect bean shortfalls, pre-dated the enactment of I.C. § 6–904B [4] and I.C. § 6–904C [5] on July 1, 1988.[6] Although a shortfall of 6,475 cwt. was detected by the DOA inspector in May of 1988, in granting summary judgment in favor of the DOA, the district court applied I.C. § 6–904B and I.C. § 6–904C without analyzing whether I.C. § 6–904B and I.C. § 6–904C applied to the claims of the growers seeking damages for beans lost prior to the effective date of the new legislation. We are satisfied that the district court correctly ruled that the growers failed to present any evidence to withstand the DOA's motion with respect to any damages occurring after the effective date of the new legislation.[7] However, the

4. That section provides as follows:

**6–904B. Exceptions to governmental liability.—** A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent and without gross negligence or reckless, willful and wanton conduct as defined in section 6–904C, Idaho Code, shall not be liable for any claim which:

1. Arises out of the detention of any goods or merchandise by any law enforcement officer.

2. Arises out of the cancellation or recision, or the failure to cancel or rescind, any motor vehicle registration and license plates for failure of the owner to verify or maintain motor vehicle liability insurance coverage.

3. Arises out of the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend, or revoke a permit, license, certificate, approval, order or similar authorization.

4. Arises out of the failure to make an inspection, or the making of an inadequate inspection of any property, real or personal, other than the property of the governmental entity performing the inspection.

5. Arises out of any act or omission providing or failing to provide medical care to a prisoner, inmate or person in the custody of any city, county or state jail, detention center or correctional facility.

5. That section provides as follows:

**6–904C. Definitions.—** For the purposes of this chapter, and this chapter only, the following words and phrases shall be defined as follows:

1. "Gross negligence" is the doing or failing to do an act which a reasonable person in a

similar situation and of similar responsibility would, with a minimum of contemplation, be inescapably drawn to recognize his or her duty to do or not do such act and that failing that duty shows deliberate indifference to the harmful consequences to others.

2. "Reckless, willful and wanton conduct" is present only when a person intentionally and knowingly does or fails to do an act creating unreasonable risk of harm to another, and which involves a high degree of probability that such harm will result.

6. Under the "effective date" statute, I.C. § 67–510, the legislation took effect on July 1, 1988.

7. The growers never make a persuasive argument that the enactment of I.C. § 6–904B and I.C. § 6–904C did not establish a standard of care more difficult to prove than the "ordinary care" standard that was applicable in *Oppenheimer Indus., Inc. v. Johnson Cattle Co.*, 112 Idaho 423, 732 P.2d 661 (1987).

The growers contend that the enactment of I.C. § 6–904B and I.C. § 6–904C in 1988 did not alter the "negligent inspection" standard recognized in cases pre-dating the legislation such as *Oppenheimer*. However, the negligence standard of care was premised on the "ordinary care" standard in section 6–904(1) of the Tort Claim Act. As set forth above, the definition of gross negligence established under I.C. § 6–904C(1) is "the doing or failing to do an act which a reasonable person in a similar situation and of similar responsibility would, with a minimum of contemplation, be inescapably drawn to recognize his or her duty to do or not do such act and that failing

growers did present the following evidence which suggests that the DOA inspector, Sparrow, acted negligently: (1) his failure to inspect the "settlement sheet" showing actual bean purchases that the Hawkins Warehouse was required to keep pursuant to I.C. § 69-239(2); (2) Sparrow's failure to follow up and confirm Hawkins' completion of the bean purchases using the uncashed checks; and (3) Sparrow's failure to confirm that the 40,-000 cwt. of beans that had been "written off" for use as seed were available. Applying the favorable inferences to which the growers are entitled at this juncture in the proceedings to this evidence, we must reverse the district court's ruling granting summary judgment in favor of the DOA only as it relates to the loss of bean inventory before July 1, 1988.

## III.

### UNDER THE DISCRETIONARY FUNCTION EXEMPTION TO GOVERNMENT TORT LIABILITY, THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE DOA ON THE GROWERS' CLAIMS FOR "FAILURE TO DISCLOSE" AND "FAILURE TO REVOKE THE WAREHOUSE'S LICENSE."

■ Both of the growers' other two claims, for negligent failure to disclose the bean shortfall and for negligent failure to revoke the Hawkins Warehouse license, were rejected by the district court under the discretionary function exemption to governmental liability. The basis of the discretionary function exemption is I.C. § 6-904(1) which provides as follows:

6-904. **Exceptions to governmental liability.**— A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which:

1. Arises out of any act or omission of an employee of the governmental entity exercising ordinary care, in reliance upon or the execution or performance of a statutory or regulatory function, whether or not the statute or regulation be valid, or based upon the exercise or performance or the failure to perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

This Court has previously interpreted that section applying the "federal planning-operational test" and concluded that "discretionary or planning functions of government are exempt from liability in tort, whereas operational functions conducted without 'ordinary care' give rise to no governmental immunity." *Oppenheimer*, 112 Idaho at 425, 732 P.2d at 663.

■ The district court concluded that the "failure to disclose" claim was foreclosed by the discretionary function exemption by looking to the relevant statutory language concerning the DOA's authority to publish the results of an inspection:

69-227. **Examination of commodities— Records—Publication of findings.**— The department of agriculture is authorized to cause examination to be made of any agricultural commodity stored, or any record pertaining to commodities stored therein, in any warehouse licensed under

that duty shows deliberate indifference to the harmful consequences to others." The growers' argument ignores the fact that the "deliberate indifference" language raises the threshold for liability. They point to *Wellard v. State Dep't of Transp.*, 118 Idaho 852, 801 P.2d 561 (1990), as proof that the standard of care was not altered by the 1988 legislation. However, *Wellard* does not support that position. *Wellard* was a case in which damages were sought against the State of Idaho for injuries sustained in a fall at a highway rest area. Wellard fell, was injured, and ultimately died in 1985. Although the "design standards" exemption of I.C. § 6-904(8), renumber-

ed I.C. § 6-904(7) by the 1988 amendments, had been modified by amendment in 1988, the Court in *Wellard* applied the exemption statute as it existed and had been interpreted before the 1988 amendment (the litigation at the district court level had been completed prior to the effective date of the 1988 amendment). From that holding, the growers incorrectly conclude that *Wellard* applied "the new law to those acts and the reasonable man doctrine was not changed or altered in any way from the many cases already decided by the Court." Growers' Opening Brief at 18.

the provisions of this chapter. Whenever, after opportunity for hearing is given to the warehouseman conducting such warehouse, it is determined that he is not performing fully the duties imposed on him by this chapter and the rules and regulations made hereunder, the department *may* publish its findings in a local daily or weekly newspaper in the area where the warehouse is located.

I.C. § 69–227 (emphasis added). The district court held that the use of the term "may" was dispositive in showing the discretionary nature of the decision. We agree.

■ The district court also relied on the use of permissive language in I.C. § 69–228 to conclude that the claim for "failure to revoke" the warehouse license was barred by the discretionary function exemption:

> **69–228. Suspension or revocation of license.—** The department of agriculture *may*, after opportunity for hearing has been afforded to the licensee concerned, suspend or revoke any license issued to any person under the provisions of this chapter, for any violation of or failure to comply with any provision of this chapter, chapter 7 of the uniform commercial code [28–7–101—28–7–603] or the rules and regulations made hereunder or upon the ground that the licensee has used his license or allowed it to be used for any improper purpose. Pending investigation the department of agriculture, whenever it deems necessary *may* suspend a license temporarily without hearing.

I.C. § 69–228 (emphasis added). Again, we agree.

The growers seem to maintain that, under *Oppenheimer Indus., Inc. v. Johnson Cattle Co.*, 112 Idaho 423, 732 P.2d 661 (1987), only the decision of whether to inspect is discretionary and that once that decision has been made, the conduct of the inspection is "operational." Essentially, it is the growers' position that publication of inspection results and revocation of a warehouse license are responsibilities subsumed within the inspection process. However, the growers' analysis overlooks the language in *Oppenheimer* indicating that "decisions made under statutes and regulations which leave room for policy judgment in their execution *are* discretionary." *Oppenheimer*, 112 Idaho at 425, 732 P.2d at 663. Applying that rationale to the present case, it is clear that the statutes governing publication and license revocation are discretionary. Therefore, the ruling of the district court is affirmed.

## IV.

### THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN AWARDING THE DOA ATTORNEY FEES UNDER I.R.C.P. 37(a)(4).

On January 4, 1991, the growers mailed interrogatories to the Director of the DOA, Dr. Greg Nelson. Although the DOA was the named defendant, Dr. Nelson had not been named as a party in either his individual or professional capacity. When no response was received, the growers filed a motion to compel, and the DOA objected on the grounds that such discovery was not authorized under I.R.C.P. 33(a).[8] The district court agreed and entered an order to that effect. Pursuant to I.R.C.P. 37(a)(4),[9] the district court awarded the DOA attorney

---

8. That rule provides in relevant part as follows:
 **Rule 33(a). Interrogatories to parties—Availability—Procedures for use.—** (1) Use of Interrogatories. Any party may serve upon any other party written interrogatories to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or governmental agency, by any officer or agent, who shall furnish such information as is available to the party. Interrogatories may, without leave of court, be served upon the plaintiff after commencement of the action and upon any other party with or after service of the summons and complaint upon that party.

9. That rule provides in relevant part as follows:

 > (4) Award of expenses of motion.... If the motion is denied, the court shall, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses .unjust.

 *Id.*

fees for the time spent in opposition to the growers' motion to compel.

 This Court has held that it is improper to serve interrogatories upon an individual non-party who is employed by a corporation that is a party. *See Straley v. Idaho Nuclear Corp.*, 94 Idaho 917, 923, 500 P.2d 218, 224 (1972). The language of I.R.C.P. 33(a) makes no distinction between corporations and governmental agencies, and the reasoning of *Straley* applies with equal force here. Thus, the district court correctly denied the growers' motion to compel.

The district court's decision to award sanctions for the growers' improper discovery litigation is reviewed only for an abuse of discretion. *See Southern Idaho Prod. Credit Assoc. v. Astorquia*, 113 Idaho 526, 528, 746 P.2d 985, 987 (1987). As the district court was clearly aware, the scope of discretion afforded under the "shall ... unless" scheme of I.R.C.P. 37(a)(4) is very limited. Accordingly, by analyzing the merits of the growers' arguments within that framework, the district court sufficiently articulated an understanding of the bounds of its discretion to satisfy the standards of *Sun Valley Shopping Center v. Idaho Power*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). And, because the court acted well within those boundaries, we will not disturb the award of sanctions.

## V.

## CONCLUSION

The district court's ruling granting summary judgment in favor of the DOA is reversed only as it relates to the loss of bean inventory before July 1, 1988, due to negligent inspections. The district court's ruling that the growers' "failure to disclose" and "failure to revoke the warehouse's license" claims are barred by the discretionary function exemption is affirmed. The district court's ruling denying the growers' motion to compel an individual employee of a governmental defendant to answer interrogatories and the award of sanctions in connection with that ruling are affirmed.

JOHNSON, TROUT, and SILAK, JJ., and WOODLAND, Justice Pro Tem, concur.