955 P.2d 612

**Wayne CROWN, Clark Bean and Steve Bean, Plaintiffs–Appellants,**

v.

**STATE of Idaho, The DEPARTMENT OF AGRICULTURE, Defendant–Respondent.**

**No. 23588.**

Court of Appeals of Idaho.

Feb. 25, 1998.

Rehearing Denied Feb. 25, 1998.

Review Denied May 19, 1998.

Lloyd J. Walker, Twin Falls, for appellants.

Elam & Burke, P.A., Boise, for respondent. Jeffery J. Ventrella argued.

AMENDED OPINION, THE COURT'S PRIOR UNPUBLISHED OPINION DATED JANUARY 21, 1998 IS HEREBY WITHRAWN

PERRY, Judge.

In this case, we review whether the district court erred in involuntarily dismissing an action brought by Wayne Crown, Clark Bean and Steve Bean (the growers)[1] against the Department of Agriculture (DOA) pursuant to I.R.C.P. 41(b). For the reasons set forth below, we affirm.

## I.

### BACKGROUND

The background of this case is as follows:

From 1983 to 1988 the growers delivered their bean crops to the Hawkins Warehouse, a licensed and bonded commodities warehouse in Filer, Idaho. The DOA conducted regular inspections of the physical contents and financial records of the warehouse pursuant to I.C. §§ 69–201 to 267 in order to ensure that the warehouse had sufficient inventory for its depositors.

Jerry Hawkins (Hawkins), the warehouse manager, called the DOA in April of 1988 and requested that the DOA come and conduct its inspection. Because he knew that he had a substantial shortfall of bean inventory, Hawkins moved one to two hundred boxes of dirt and bean culls into the warehouse and then surrounded them with boxes of beans. Hawkins also doctored the warehouse books so that it appeared that 40,000 cwt. of beans were "written off." He also had checks drawn

---

1. The matter was certified as a class action pursuant to I.R.C.P. 23 on September 20, 1995.

up to show a fictional planned purchase of 30,000 cwt. of additional beans.

David Sparrow (Sparrow) came to the warehouse on behalf of the DOA and conducted the inspection from May 3, 1988, to May 9, 1988. Sparrow never discovered the boxes filled with dirt and culls and accepted Hawkins' explanation that the 40,000 cwt. of beans that had been "written off" were transferred to treated seed. Although Sparrow's inventory still found the warehouse to be 6,475 cwt. short, Sparrow accepted Hawkins' representation that additional beans were to be purchased when Hawkins showed Sparrow several uncashed checks made payable to growers.

Sparrow completed his inspection but never followed up to see if Hawkins purchased the beans as promised. In late August 1988, the growers began to deliver their 1988 bean crop to the warehouse. On November 21, 1988, after an internal audit revealed the warehouse's serious inventory shortfall, the warehouse management ceased operation and contacted the DOA which then seized the warehouse.

The growers' case was originally brought on January 5, 1989, as a class action against a number of parties, including the DOA. However, the DOA was dismissed as a party because the growers had failed to comply with the Idaho Tort Claims Act's requirement that they first present their claim to the governmental defendant.

On January 6, 1989, the Hawkins Warehouse filed a Chapter 11 petition in bankruptcy. The growers then initiated an adversarial proceeding as part of that litigation in which the DOA was named as a defendant.

After the DOA was dismissed from the above-described class action and the growers' claim under the Tort Claims Act was denied, the present case was filed on November 2, 1990. The growers alleged that the DOA had negligently conducted inspections of the Hawkins Warehouse that failed to disclose shortfalls in inventory from the 1983–88 growing seasons. In addition, the growers alleged that the DOA negligently failed to inform them of the insufficient inventory and failed to close the warehouse upon learning of the shortfall in 1988, thus allowing the growers to deliver their 1988 crop to a warehouse that the DOA knew was in non-compliance. The growers alleged damages for loss of half of their 1988 crop and for beans deposited prior to 1988.

*Crown v. State, Dep't of Agriculture,* 127 Idaho 175, 177–78, 898 P.2d 1086, 1088–89 (1995) (footnotes omitted). Subsequently, the DOA moved for summary judgment and dismissal which the district court granted. The growers appealed and the Supreme Court reversed the district court's order granting summary judgment and dismissal in favor of the DOA, but only on the issue as it related to "the loss of bean inventory before July 1, 1988, due to negligent inspections." *Id.* at 182, 898 P.2d at 1093. The Supreme Court affirmed the district court's order on all other issues. *Id.*

On remand, this negligence action was set for court trial and was bifurcated as to liability and damages. The liability trial commenced December 10, 1996. After the growers' case-in-chief, the DOA moved under I.R.C.P. 41(b) for involuntary dismissal. The district court granted the DOA's motion and entered a judgment of dismissal with prejudice. The district court issued findings of facts and conclusions of law, to which the growers objected. The growers moved to augment the record and moved "to apply evidence" or in the alternative for a new trial. The growers also made several other motions. After a hearing on January 27, 1997, the district court denied the growers' motions. The growers appealed.

## II.

## DISCUSSION

### A. Sufficiency of Evidence

The growers allege that the district court's findings of fact are not supported by substantial, competent evidence. Specifically, the growers assert that the "conduct of Mr. Sparrow in testimony under oath concerning his physical count of the warehouse, his review of the book record and the impossible reconciliation of those sets of figures, establish an orderly and absolutely false and negli-

gent examination." The growers also assert that the "inspection performed by David Sparrow was not that of an ordinarily prudent person acting under all of the circumstances and conditions then existing."

The DOA argues that the growers failed to present evidence to support the growers' negligence claim. Specifically, the DOA contends that because no plaintiffs testified, the growers could not establish that the DOA owed any duty to them. The DOA also argues that there was no evidence to support the growers' claim that the DOA breached any duty owed to the growers. Regarding the element of causation, the DOA asserts that the inventory loss pre-dated the DOA's examination. Thus, assuming Sparrow negligently conducted his examination, the DOA contends that the negligent examination was not the proximate cause for the inventory loss. Moreover, because no plaintiffs testified, the DOA argues that the growers failed to prove that the plaintiffs suffered any harm.

In dismissing the growers' case, the district court found:

**1. *As to Duty***

25. No named Plaintiff testified in this matter.

26. No member of the Plaintiffs' class testified in this matter.

27. No evidence was adduced, nor can any reasonable inference be drawn from the evidence which was presented, which established that any class member actually had deposited commodity in the Hawkins' warehouse facility.

. . . .

**2. *As to Breach.***

. . . .

34. No evidence was adduced, nor can any reasonable inference be drawn from the evidence which was presented, which established that the Department breached any applicable duty or standard of care in conjunction with any warehouse examination it conducted upon the Hawkins facility at any time before July 1, 1988.

**3. *As to Proximate Cause.***

35. No evidence was adduced, nor can any reasonable inference be drawn from

the evidence which was presented, which established that any member of the Plaintiffs' class had any commodity on deposit in the Hawkins facility.

36. No evidence was adduced, nor can any reasonable inference be drawn from the evidence which was presented, which established that any member of the Plaintiffs' class sustained any harm by virtue of the Department's conduct.

**4. *As to Harm.***

37. No evidence was adduced, nor can any reasonable inference be drawn from the evidence which was presented, which established that any member of the Plaintiffs' class sustained any harm or loss before July 1, 1988.

Subsequently, the district court concluded:

10. Based upon the lack of evidence concerning class members who may have been depositors in the Hawkins facility during the applicable time period, the court concludes that the Plaintiffs have failed to prove, either directly or by reasonable inference, and no evidence does prove, that the Department owed any duty to any class member.

11. The court concludes that the Plaintiffs failed to prove, either directly or by reasonable inference, and no evidence does prove, that the Department breached any duty which it may have owed to the Plaintiffs' class.

12. The court concludes that the Plaintiffs failed to prove, either directly or by reasonable inference, and no evidence does prove, that the Department's conduct proximately caused any harm to the Plaintiffs' class which may have occurred.

13. The court concludes that the Plaintiffs failed to prove, either directly or by reasonable inference, and no evidence does prove, that any member of the Plaintiffs' class sustained any harm or loss before July 1, 1988.

An appellate court will uphold factual findings made in granting a motion for involuntary dismissal so long as the findings are not clearly erroneous; however, it will review freely any application of the law to

the facts found. *Record Steel & Constr., Inc., v. Martel Const., Inc.,* 129 Idaho 288, 291, 923 P.2d 995, 998 (Ct.App.1996). We do not weigh the evidence, nor do we substitute our view of the facts for the view of the trial judge. *Christensen v. Nelson,* 125 Idaho 663, 665, 873 P.2d 917, 919 (Ct.App.1994). We defer especially to the trial court's opportunity to judge the credibility of witnesses appearing personally before it. *Id.* Where findings made by the trial court are challenged on appeal, the evidence must be considered most favorably toward the respondent and against the appellant. *McCoy v. McCoy,* 125 Idaho 199, 202, 868 P.2d 527, 530 (Ct.App.1994).

■ Initially, we need to address two evidentiary challenges raised by the growers— the admissibility of Sparrow's work papers and the individual grower cards. At trial, counsel for the growers called Sparrow, the inspector who conducted an examination for the DOA of the Hawkins Warehouse in early May 1988. During counsel's examination of Sparrow, counsel sought to admit Sparrow's work papers from his May 1988 inspection. However, because Sparrow's work papers belonged to the DOA and Sparrow no longer worked for the DOA, he did not bring the work papers to trial. On appeal, the growers assert that the district court erred in not allowing the growers time to acquire Sparrow's work papers. However, the growers failed to request a continuance from the district court in order to obtain the work papers. Further, the growers have provided neither authority nor argument in support of this issue. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers,* 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct.App.1997). Hence, we will not address whether the district court erred in excluding the work papers from trial.

■ Counsel for the growers also attempted to impeach Sparrow's testimony through the use of the individual grower cards. The district court, however, did not allow the grower cards to be admitted because the growers failed to list the grower cards as an exhibit prior to trial. On appeal, the growers contend that the district court erred in refusing to admit the grower cards. The growers argue that the growers' attorney "had no knowledge or even suggestion that Mr. David Sparrow was going to lie about his utilization of the individual bean grower cards." First, the growers have cited no authority in support of their claim that the district court erred in refusing to admit the grower cards. *Id.* Second, the growers' allegation is without merit considering counsel for the growers previously attacked the credibility of Sparrow's testimony in an earlier related case. *See Crown v. Hawkins Co., Ltd.,* 128 Idaho 114, 120, 910 P.2d 786, 792 (Ct.App.1996) ("The Growers also assert that the district court should not have found Sparrow's testimony credible."). On review, we conclude that the growers have failed to demonstrate that the district court erred in excluding the grower cards from use at trial.

■ Next, we review the main thrust of the growers' appeal—whether the district court's findings of fact are supported by substantial, competent evidence. At trial, the growers failed to call any class members to testify. The growers did call Sparrow, the DOA inspector. Counsel for the growers extensively examined Sparrow and attempted to demonstrate that Sparrow's inspection had been negligently conducted. Besides Sparrow's testimony, the growers' only other witnesses who testified at trial were Walter DeForest and Rick Davis, Hawkins warehouse employees. DeForest and Davis both testified that they had moved boxes of culls and dirt into the Hawkins warehouse prior to Sparrow's examination in May of 1988. It was undisputed, however, that Hawkins, the warehouse manager, doctored the books and had boxes of culls and dirt moved into the warehouse to conceal the shortage of beans. Although DeForest testified that he had accompanied Sparrow through the warehouse during Sparrow's examination, DeForest's testimony did not evidence that Sparrow negligently conducted his examination.

As set out earlier in this opinion, the district court made numerous findings of fact regarding the growers' negligence claim in dismissing their case. In the growers appeal, however, they have not challenged any specific finding of fact as being clearly erroneous; rather, the growers' argument is

based on bare assertions and conclusory allegations, many of which are based on evidence not admitted at trial—Sparrow's work papers and the individual grower cards. Thus, after thoroughly reviewing the growers' contentions, we conclude that the district court's findings of fact are not clearly erroneous. Accordingly, the district court's order involuntarily dismissing the growers' case is affirmed.

## B. Attorney Fees

The DOA contends that prosecution of this appeal was in bad faith and that the DOA should be entitled under I.C. § 6–918A to attorney fees on appeal. Attorney fees are allowed under this statute only if it appears "by clear and convincing evidence" that the litigation was conducted in "bad faith." *See Bissett v. Unnamed Members of the Political Compact,* 111 Idaho 863, 865, 727 P.2d 1291, 1293 (Ct.App.1986). We are not of the opinion that this standard has been met in this appeal and, therefore, conclude that the DOA is not entitled to attorney fees.

## III.

## CONCLUSION

We affirm the district court's order involuntarily dismissing the growers' case. Costs, but not attorney fees, are awarded to Respondent, DOA.

LANSING, Chief Judge, specially concurring.

While I join in the foregoing opinion, I write separately to address what I consider to be a specific fatal deficiency in the growers' trial evidence.

In *Crown v. State Department of Agriculture,* 127 Idaho 175, 898 P.2d 1086 (1995), the Idaho Supreme Court affirmed the district court's summary judgment against the growers with respect to all claims except those relating to "the loss of bean inventory before July 1, 1988, due to negligent inspections." *Id.* at 182, 898 P.2d at 1093. The Court held that as to any losses occurring after that date, the trial court had properly granted summary judgment based on I.C. §§ 6–904B, and 6–904C. Therefore, the Court reversed the summary judgment "only as it relates to loss of bean inventory before July 1, 1988." *Id.* at 180, 898 P.2d at 1091. Thus, upon remand following that Idaho Supreme Court decision, it should have been abundantly clear to plaintiffs' counsel that in any ensuing trial it would be incumbent upon the plaintiffs to prove they suffered some loss between May 9, 1988, the date that the allegedly negligent inspection was completed, and July 1, 1988. However, the record here is devoid of evidence of any losses occurring during that short time frame, either through additional deposits of commodities by the growers or additional thefts committed by Hawkins. Therefore, regardless of the correctness of other bases stated by the district court for its decision, the lack of this element of proof was fatal to the plaintiffs' claims.

SCHWARTZMAN, Judge, specially concurring.

I concur in the result reached in the lead opinion and in the specially concurring opinion of Chief Judge Lansing. I write only to note that the record is also devoid of any evidence of negligent inspections by the DOA occurring prior to May of 1988. The best the growers could show was some form of "negligence in the air," but without proximately caused damages directly applicable to the discrete time frame mandated by the Supreme Court decision.